**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**NORRIS MICHAEL THOMAS,**

    **Petitioner,**

vs.

                                  **CASE NO. 1:05cv47-MP/WCS**

**JAMES McDONOUGH[1] and the
FLORIDA PAROLE COMMISSION,**

    **Respondents.**

_____/

**REPORT AND RECOMMENDATION**

This is an amended petition for writ of habeas corpus filed by Norris Michael Thomas pursuant to 28 U.S.C. § 2254. Doc. 13.[2] Petitioner challenges the revocation of his parole on June 4, 2002. Respondent filed an answer to the initial petition with exhibits, doc. 9, and a supplement to respond to the amended petition, doc. 16. The Secretary of the Florida Department of Corrections, as custodian of Petitioner, filed an

---

[1] James McDonough succeeded James Crosby as Secretary for the Department of Corrections, and is automatically substituted as Respondent. FED. R. CIV. P. 25(d).

[2] The amended petition replaced the initial petition, doc. 1. It contains the first two claims in the original petition and adds a third claim.

answer. Doc. 17. Petitioner filed a traverse to the initial answer, doc. 11, and to the supplement, doc. 18. Respondent concedes that the petition was timely filed. Doc. 9-1, p. 7.[3]

**Procedural History**

Petitioner was sentenced to a term of life imprisonment in 1969 for second degree murder. Doc. 9-1, p. 2. He was released on parole in 1979 to a term of supervision for life, and that parole was revoked in 1988. *Id.* He was again paroled in 1990. *Id.* On June 30, 1993, a warrant was issued for Petitioner's arrest charging him with absconding from his residence and employment without telling his parole officer. *Id.* Petitioner was not found until 7 years later, in New York. *Id.*

The petition pending before this court concerns the parole revocation procedures that followed. On January 30, 2001, Petitioner was given a Notice of Rights to a Final Revocation Hearing, and he initialed a section stating "I hereby knowingly and voluntarily waive my right to be represented by an attorney." *Id.*, citing doc. 9-3, p. 22 (Ex. G). On January 20, 2001, Petitioner also signed another form acknowledging that he knew he had a right to be represented by an attorney and waiving that right. Doc. 9-3, p. 23. Petitioner was informed on the same day that he was charged with "changing your residence and employment without first securing the permission of your Parole Officer" as of June 14, 1993, and failing to make truthful written reports for the months of March, April, and May, 1993. Doc. 9-3, p. 21.

---

[3] References in this report and recommendation will be to the document number and page number assigned at the top of the document by the electronic docket. These differ from the exhibit numbers or letters or the page numbers or state record numbers that may also be on the documents.

Petitioner had a final revocation hearing on February 14, 2001. Doc. 9-3, p. 25 (Ex. H). Petitioner stated at that hearing that he

> left Jacksonville in May, 1993, to go to South Carolina for a new job. He indicated he then went to New York. Thomas stated he was young and foolish and didn't know how serious it was to not report. Thomas stated if given another chance he would appreciate it. . . .

Doc. 9-3, p. 26. On June 4, 2002, the Parole Commission revoked Petitioner's parole. Doc. 9-3, p. 29 (Ex. I). On October 25, 2001, the Commission established Petitioner's presumptive parole release date (PPRD) as July 5, 2008. Doc. 9-3, p. 31 (Ex. J).

**Section 2254 Standard of Review**

"Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court. 28 U.S.C. §§ 2254(b)(1), (c)." O'Sullivan v. Boerckel, 526 U.S. 838, 839, 119 S.Ct. 1728, 1730, 144 L.Ed.2d 1 (1999). To properly exhaust remedies as required by § 2254(b), "the federal claim must be fairly presented to the state courts." Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (*citing* Picard).

If a claim was not fairly presented but is procedurally barred from further state court review,[4] Petitioner must demonstrate cause for the default and actual prejudice, *or* demonstrate that the constitutional violation has probably resulted in conviction of an innocent person. Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115

---

[4] Procedurally defaulted claims are considered technically exhausted because state court remedies no longer remain "available." The court therefore refers to "fairly presented" claims as having been *properly* exhausted, to distinguish them from claims exhausted by procedural default. See O'Sullivan, 526 U.S. at 848, 119 S.Ct. at 1734.

L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991).

For claims which were properly exhausted and adjudicated in state court, this court's review is limited.  "[A] determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted). Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d)(2); 321 F.3d at 1322 (citing the statute).  Section 2254(d)(2) is satisfied "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record."  Lomholt v. Iowa, 327 F.3d 748 , 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings.  Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495, 1519-1520, 146  L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citing Williams).  "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings of the

Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court precedent. Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850.

**Legal Analysis**

### Ground One

Petitioner contends that he was denied due process because he was denied representation by counsel. Doc. 13, p. 5. He argues that as a consequence, he was found guilty due to a "coerced confession." Id. He contends that his violation was only technical, and did not warrant another 8 years in prison. Id. Respondent addresses the merits of this first claim, and does not present the defense of procedural bar. Doc. 9-1, pp. 9-11.

The circuit court denied this claim without a hearing. Doc. 9-6, pp. 26-27 (Ex. T). It held that Petitioner waived the right to counsel due his "express written waiver." Id., p. 26. The court also held that Petitioner had no federal constitutional right to counsel because he did not qualify for counsel, citing Gagnon v. Scarpelli, 411 U.S. 778, 36 L.Ed.2d 656, 93 S.Ct. 1756 (1975). Id., p. 27.

Petitioner alleges in the petition before this court that on January 5, 2001, he was interviewed by a representative of the Parole Commission who told him that he would not appoint counsel for Petitioner because it was thought that Petitioner had enough education to represent himself.  Doc. 11-1, pp. 5-6.  He also asserts that his examiner, Mr. Willis, never told him of a right to be represented by counsel, and that he placed his initials and signature on the waiver forms without being able to read them because he had lost his eye glasses.  *Id.*, p. 6.

Petitioner asserted in state circuit court that:  "The Petitioner was not given an opportunity to be represented by counsel . . . ."  Doc. 9-5, p. 14 (Ex. P).  In response, the Commission argued that Petitioner had no right to counsel because he "was 52 years old, had a GED and some college education, could read and write, had no speech problems, had no emotional problems, was on no medication, and understood the charges . . ."  Doc. 9-6, p. 8 (Ex. R).  In reply, Petitioner alleged that "the interviewer mislead the Petitioner 'by stating' the commission will [not][5] appoint you counsel; because they (commission) feel you have enough education to represent yourself."  Doc. 9-6, p. 19 (Ex. S).  He also alleged that his eye sight was bad, and he could not clearly see the "words on the paper," and he depended upon the Commission representative, who "pointed to the Xs and said write your initials and sign your name here."  *Id.*, p. 20.  He said: "It was devastating and shocking to see my initials and

---

[5] The negative is not in this sentence, but the same sentence appears in the petition in this court with a negative, so it is assumed by the context that this is what Petitioner meant to allege.

signature voluntarily waiving my right to be represented by an attorney, which the Petitioner never receive a copy." *Id.*

Petitioner appealed the unfavorable decision in the circuit court, but he did not raise the issue of denial of counsel at his revocation hearing. Doc. 9-7, pp. 1-28 (Ex. U) (initial brief on appeal). Therefore, he procedurally defaulted this right-to-counsel claim. Respondent, however, has not raised the defense of procedural bar, and the court should proceed to the merits of the claim. There is no need to address the issue of waiver of counsel as Petitioner has failed to show a federal constitutional right to counsel.

Gagnon v. Scarpelli held that the right to be represented by a lawyer in a parole revocation proceeding is conditional:

> By the same token, we think that the Court of Appeals erred in accepting respondent's contention that the State is under a constitutional duty to provide counsel for indigents in all probation or parole revocation cases. While such a rule has the appeal of simplicity, it would impose direct costs and serious collateral disadvantages without regard to the need or the likelihood in a particular case for a constructive contribution by counsel. In most cases, the probationer or parolee has been convicted of committing another crime or has admitted the charges against him. And while in some cases he may have a justifiable excuse for the violation or a convincing reason why revocation is not the appropriate disposition, mitigating evidence of this kind is often not susceptible of proof or is so simple as not to require either investigation or exposition by counsel.

411 U.S. at 787, 93 S.Ct. at 1762 (footnote omitted). The Court further said:

> Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In

> passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself.

411 U.S. at 790-791, 93 S.Ct. at 1764.

Petitioner has not demonstrated any federal right to counsel. Petitioner walked away from parole supervision and was gone for over 7 years. This was a factually simple charge, and Petitioner admitted that he absconded. Petitioner did not need a lawyer to litigate the question of whether he violated the terms of his parole. Likewise, Petitioner did not present any evidence in the state court or in this court that he had anything to present in mitigation. Nor has Petitioner disputed the Commission's assertions that he was then 52 years of age, had some college education, had no trouble understanding the charges against him, and was capable of speaking effectively for himself. Thus, Petitioner has not shown that the state court's application of <u>Gagnon</u> to his claim for appointment of counsel has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground Two**

Petitioner contends that Respondents violated administrative rules in setting his new presumptive parole release date. Doc. 13, p. 6. The same sort of state law violations are argued with greater specificity in document 11-1, pp. 8-24.

Petitioner made the same claim in an earlier suit in this district and received an unfavorable ruling. Case No. 3:03cv445-MCR/MD, doc. 14, p. 4-5 (report and recommendation); doc. 16 (order adopting).

The claim is still without merit. A violation of a state rule of procedure or of a state law is not itself a violation of the federal constitution. Engle v. Isaac, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); Wallace v. Turner, 695 F.2d 545, 548 (11th Cir. 1983) (procedural rule); Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1989) (sentencing guidelines); Carrizales v. Wainwright, 699 F.2d 1053, 1054-1055 (11th Cir. 1987) (jury instruction).

Further, none of these allegations implicate the federal constitution. There is no constitutional right to parole in Florida, and the decision of whether or when to parole an inmate is committed to the discretion of the Commission, guided by its own rules. Jonas v. Wainwright, 779 F.2d 1576, 1577 (11th Cir. 1986). Although much of the statutory parole scheme in Florida is written in mandatory terms, "[t]he setting of the presumptive parole release date and the decision whether that date is to become the effective parole release date are matters left ultimately to the discretion of the Commission." Staton v. Wainwright, 665 F.2d 686, 688 (5th Cir.), *cert. denied*, 102 S.Ct. 1757 (1982).[6] The Eleventh Circuit found the discretionary nature of the Commission "apparent" based on the wording of Fla. Stat. § 947.18, which gives final discretion to the Commission.[7] Since the decision is left to the Commission without mandate of statute, there is no liberty interest. *Id.* The Eleventh Circuit has rejected the claim that the Florida Parole Commission violated a petitioner's due process rights by

---

[6] The Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

[7] Section 947.18 has subsequently been amended although not in relevant part. The former statute is set forth in Staton, 665 F.2d at 688.

improperly calculating his presumptive parole release date, which is the precise contention here. Hunter v. Florida Parole & Probation Commission, 674 F.2d 847, 848 (11th Cir. 1982) (agreeing with Staton). *See also* Paschal v. Wainwright, 738 F.2d 1173 (11th Cir. 1984). Ground two affords no relief.

**Ground Three**

Read liberally, Petitioner contends that because his offense was committed in 1969, his expectation of parole should be governed by the laws in existence in 1969. Doc. 13, p. 6. Petitioner did not more specifically describe this claim until he filed his last traverse in which he clarifies that when he committed his offense, he was entitled to annual reviews, but since the 1978 changes to parole in Florida, he receives interviews every two years. Doc. 18-1, p. 7. He alleges he was last interviewed in February, 2004, and will not be interviewed again until December, 2006. *Id.*, p. 9.

Respondent contends that Petitioner failed to exhaust state court remedies as to this claim. Doc. 16, pp. 4-6. Petitioner disputes this. He argues that he raised the *ex post facto* claim by a petition for writ of mandamus. Doc. 18-1, p. 3. He refers to his motion to amend his petition, doc. 10-1, in which he asserted that he filed the petition in circuit court on October 14, 2003, and his attempt to seek review in the appellate court ended without success on April 26, 2005. Doc. 10-1, p. 2.

"An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). This is recommended here.

There are "two broad categories of prisoner petitions: (1) those challenging the fact or duration of confinement itself; and (2) those challenging the conditions of

confinement." Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Habeas corpus is the exclusive remedy for a prisoner who challenges "the fact or duration of his confinement and seeks immediate or speedier release . . . ." Heck v. Humphrey, 512 U.S. 477, 481, 114 S.Ct. 2364, 2369 (1994). Where a litigant is not challenging the fact or duration of confinement, but rather the conditions of that confinement, then a civil rights complaint pursuant to 42 U.S.C. § 1983 is the proper avenue of relief. *See* Porter v. Nussle, 122 S.Ct. 983, 989, 122 S.Ct. 983, 990, 152 L.Ed.2d 12 (2002), *citing* McCarthy v. Bronson, 500 U.S. 136, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991) and Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

Were this court to agree that the timing of Petitioner's parole interviews has subjected him to an *ex post facto* violation, the result would not be earlier release for Petitioner. The result would be a change to his conditions of confinement, that is, Petitioner would enjoy more frequent parole interviews. The third claim cannot be considered in a § 2254 petition.

**Conclusion**

Accordingly, it is **RECOMMENDED** that 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Norris Michael Thomas challenging the revocation of his parole on June 4, 2002, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on May 30, 2006.

s/  William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

Case No. 1:05cv47-MP/WCS

...

...

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case No. 1:05cv47-MP/WCS